IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH, 1890.

## C. S. MARK v. ISAAC OSMER.

APPEAL BY USE PLAINTIFFS FROM THE COURT OF COMMON
PLEAS OF VENANGO COUNTY.*

Argued October 8, 1890—Decided November 3, 1890.
[To be reported.]

1. When the purchaser of real estate at sheriff's sale claims to be entitled to the proceeds of the sale as a lien creditor, and the sheriff, without making a special return under the provisions of the act of April 20, 1846, P. L. 411, takes the purchaser's receipt therefor, the taking of such a receipt is an official act which the sheriff performs at his own risk.
2. If, after making such an appropriation of the proceeds of sale, the sheriff learns that there was a prior lien upon the land and is obliged to pay the same, the statute of limitations runs against his right of action to recover from the purchaser the amount so paid, not from the date at which the prior lien was brought to his notice, but from the date when the receipt was taken.
3. Where there is evidence that the purchaser, having knowledge of the existence of the prior lien, concealed it from the sheriff, and thereby induced the sheriff to accept his receipt, the statute might not begin to run until the discovery of such fraud and concealment; but, when no such fraud is shown, the statute will bar such an action, brought more than six years after the giving of the receipt.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL JJ.

No. 176 October Term 1890, Sup. Ct.; court below, No. 54 November Term 1889, C. P.

On October 19, 1889, Cyrus S. Mark, to the use of John Pryer, David Pryer and Stephen A. Pryer, brought assumpsit against Isaac Osmer, to recover the sum of $600, with interest from May 9, 1881. Issue.

At the trial on March 12, 1890, the following facts were shown: Cyrus S. Mark, the legal plaintiff, in 1881 the sheriff of Venango county, sold at sheriff's sale on April 4, 1881, at the suit of Isaac Osmer, certain land as the property of Jesse A. J. Pryer. The land so sold had been devised to Jesse A. J. Pryer by his father, William Pryer, charged in the will with legacies of $200 each, in favor of John, David and Stephen A. Pryer, the use plaintiffs. The will directed that the legacies should be paid five years after the death of the testator's widow. The widow died in 1879, and the legacies were therefore not payable until 1884. At the time of the sheriff's sale in 1881, these legacies were the first liens upon the land of Jesse Pryer.

The sheriff's advertisement of the sale, after describing the property, specified the following as the terms of sale:

" The following must be strictly complied with when property is stricken down:

" 1. When the plaintiff, or other lien creditor, becomes the purchaser, the costs on the writs must be paid, and a list of the liens including mortgage searches on the property sold, together with such lien creditor's receipt for the amount of the proceeds of the sale or such portion thereof as he may claim, must be furnished the sheriff."

Isaac Osmer, the plaintiff in the execution and the present defendant, became the purchaser of the land at the sheriff's sale, for the sum of $2,085.

On April 28, 1881, the sheriff acknowledged in open court a deed to Osmer for the property, and on May 9, 1881, lien certificates from the prothonotary and recorder, upon the face of which Osmer appeared to be entitled to the proceeds of the sale, having been furnished to the sheriff, Osmer paid to the sheriff the costs taxed on the execution, and gave to him a receipt for the remainder of the purchase money, to wit, $2,041.15, as applicable to the debt and interest of the judgment, and the sheriff accepted this receipt in settlement of Osmer's bid.

Statement of Facts.

At the time of this transaction, the sheriff was ignorant of the existence of the charges created by the will of William Pryer. For the purpose of showing, on the present trial, that Osmer had knowledge thereof, the plaintiff called John Pryer, who testified that in a conversation with the witness, after the sheriff's sale, Osmer remarked that "he did not care for the property, any more than he wanted to run it up to cover the legacies, or to pay off the legacies, over and above what his claim was;" and that some time before the sheriff's sale, on the day of a sale of personal property held upon the farm devised to Jesse, Osmer said to the witness that he, Osmer, "was trying to make the proceeds of that sale go to pay the legacies." There was no other testimony upon this point.

The sheriff first learned of the legacies in 1885, when the legatees brought ejectment against Osmer, upon the theory that the devise to Jesse Pryer was a conditional one, depending for its efficacy upon the payment of the legacies. Failing therein, the legatees brought actions of assumpsit against the sheriff and Osmer, to recover the amounts of the legacies, upon the ground that the sheriff had wrongfully paid to Osmer the proceeds of the sheriff's sale of the land. Osmer's name was subsequently stricken from the record, on motion of the plaintiffs' counsel, and, on the trial of those actions, the plaintiffs recovered judgments against the sheriff. Upon appeals by the defendant to the Supreme Court, those judgments were affirmed, October 9, 1889: Pryer v. Mark, 129 Pa. 529.

The present action was then brought, and recovery against Osmer was sought upon two grounds; the first count of the plaintiffs' statement of claim resting the plaintiff's demand upon an alleged fraudulent receipt by Osmer of the proceeds of the sheriff's sale, and the second count alleging a promise of indemnity made by Osmer within six years prior to the bringing of the suit.

In support of the allegation in the second count, the legal plaintiff, Mark, testified that, in October, 1885, as soon as he learned of the existence of the legacies, he hunted up Osmer and had a conversation with him on the subject:

" Q. What did he say to you ? A. My conversation with him was in reference to securing me, or rather with reference to this possibly becoming a claim against me, as I understood, the

Charge of Court below.

shape it was in, it probably would; and I wanted him to agree to secure me; being an innocent party in the matter, I didn't want to be held responsible.  Q. What did he do?  A. He agreed to see that I was kept clear and that the matter did not cost me anything, he would stand between me and the other parties. . . . . Q. State if he subsequently denied making the agreement which you have referred to, and, if so, when he made that denial?  A. I don't remember now of his ever denying it in words.  I would say this: that every conversation I had with Mr. Osmer, the one I had then and every one I had since then, up to the thing got in shape—in fact, up to the very time that his name was stricken off—up to that time every conversation I had, while not promising in so many words, but the inference was left with me that it would not cost me anything; but from that time to this I could never get that admission out of him."

Being asked upon cross-examination, why he did not take a bond of indemnity from Osmer in 1885, the witness answered that Osmer refused to do anything more than what the witness had stated.  Osmer, testifying on his own behalf, denied that he had ever promised to indemnify Mark.

At the close of the testimony, the court, TAYLOR, P. J., charged the jury as follows:

In this case there was a lien creditor.  Where there is no lien creditor, and a sheriff takes upon himself a distribution, as he did in this instance, the authorities cited by plaintiffs' counsel would have been in point.  [But, where there is a lien creditor, and he claims the proceeds of the sale, we think then, if the sheriff distributes it, he does so at his own risk.  Where there is a lien creditor, he is not simply dealing "party with party, outside of court," as is said in one case cited here.  He is dealing as a sheriff, and the act of his in taking a lien creditor's receipt is an act in his official capacity as sheriff;][1] and we think that from that time the statute of limitations would commence to run, for the reason that then the right of action would be complete as soon as the sale was fully consummated.

We see no evidence of any such a fraud here as would warrant the tolling of the statute.  If the evidence showed that it was known to Mr. Osmer, at the time, that those liens were a

Charge of Court below.

charge upon the land, and he perpetrated a fraud in concealing it; if there was such evidence as would warrant a chancellor in setting aside a sheriff's sale for that reason, then we might say that the statute would not commence to run until the fraud was discovered by reasonable diligence. But here, seven or eight years elapsed after this sheriff's sale. In the meantime, not only the sheriff and the creditors have rights to be protected, but, in the case of a lien creditor, who is the purchaser at the sheriff's sale, he has some rights also.

If the sheriff had done his simple duty under the law, just what the law said he must do where a lien creditor claimed the proceeds of the sale, paid the money into court and had an auditor appointed, if any question arose, to distribute the funds, he would have been amply protected from any loss that anybody would have incurred. Then this question would have arisen before the auditor as to who was entitled to the funds, whether it was the lien creditor, or whether first the payment of those legacies must be made; and then, the money still being in court and the court having control of it, if it was determined against the lien creditor, he could then come in and ask to have the sale set aside, upon the ground that there was a fraud there, or that he was deceived.

There is something due to the purchaser of land, and there must be a time within which the title to a man's land is acquired. [We think that, in this instance, the time within which this suit should have been brought was six years from the time of the taking of that lien creditor's receipt. Not having done so, and the sheriff having neglected his own duty under the law, if anybody must suffer we think that the party should suffer whose wrong has occasioned any loss, particularly when he allows the creditor to remain in possession of the land and assuming that his judgment is paid by the sale of the land, for the period of more than six years before he says anything about it; but we think if there was any fraud there, he might by reasonable diligence have discovered it within six years.] [2]

[Under these instructions, if you believe the testimony here, your verdict should be for the defendant.] [3]

The verdict of the jury was in favor of the defendant. A rule for a new trial having been discharged, judgment was en-

Arguments.

tered on the verdict; whereupon the use plaintiffs took this appeal, specifying that the court erred:

1–3. In charging as set forth in [ ] [1 to 3]

4. In not submitting, under proper instructions, the liability of the defendant upon the first count of the plaintiff's statement of claim.

5. In not submitting to the jury the liability of the defendant upon the second count of said statement of claim.

*Mr. George S. Criswell* (with him *Mr. J. W. Lee* and *Mr. F. W. Hastings*), for the appellants:

1. It was Osmer's duty, under the law, to furnish a certificate of the legacies to the sheriff, and the latter was as much entitled to notice of them as he was to notice of judgments and mortgages: Mather v. McMichael, 13 Pa. 301. Osmer knew of the existence of the legacies before the sale, and his talk with John Pryer, about bidding up the land to cover the legacies, shows that he knew they were a lien upon the land. At the sale and afterwards he fraudulently concealed this knowledge from the sheriff, and claimed and represented that he was entitled to the entire proceeds, and with guilty knowledge took the money.

2. No special return was or could have been made by the sheriff, because Osmer failed to give or tender his receipt as a lien creditor in time to enable this to be done. The taking of the receipt after the deed had been acknowledged was an unofficial act. The giving of the receipt was equivalent to the receipt of the money by Osmer: Mann's App., 1 Pa. 29; but it cannot be said that the money was honestly received. There was intentional fraud. It is true, as held in Sankey v. McElevey, 104 Pa. 273, that to toll the running of the statute of limitations, there must generally be more than mere concealment or silence. But silence or concealment itself is enough, when there is a duty to give information.

3. In this case, we have both an affirmative act of fraud, the defendant representing that he was entitled to the entire proceeds of sale, when he knew better; and also a statutory duty to give information: §§ 1, 2, act of April 20, 1846, P. L. 411. The court below says that "the party should suffer whose wrong has occasioned the loss." Who committed the wrong? The only wrong that was committed was the defendant's, and he got

thereby $600 to which he was not entitled. No reasonable diligence would have enabled the sheriff to discover the fraud until after the legacies matured. When it was discovered, he at once sought the defendant, who agreed to protect him from loss. This suit was brought immediately after the final determination of the action against the sheriff.

4. If the testimony in support of the first count in the plaintiff's statement was believed, the plaintiff had a right to recover: McDonald v. Todd, 1 Gr. 17. The second count is sustained by the positive testimony of Mark, that the defendant agreed, in October, 1885, to stand between Mark and the other parties. The language used in that conversation was a clear and explicit agreement to indemnify. Moreover, we submit that it was error to give binding instructions for the defendant, and that the testimony ought to have been submitted to the jury under proper instructions: Hyatt v. Johnston, 91 Pa. 196; Longenecker v. Railroad Co., 105 Pa. 328. The fact that Osmer secured money to which he had no legal or moral right, is a sufficient consideration for his promise to the plaintiff: Stebbins v. Crawford Co., 92 Pa. 289.

*Mr. C. Heydrick* (with him *Mr. Carl I. Heydrick*), for the appellee:

1. Osmer was informed by the sheriff's advertisement that, as a lien creditor, he might bid the amount of his judgment without being obliged to pay more than the costs in case he became the purchaser. Upon the terms of the sale, the sheriff had no right to demand payment of his bid in money. Osmer stood upon his statutory right to give his receipt for the amount of the bid, less the costs; and, even if the validity of that receipt, as a payment of his bid, had been adjudicated against him in the appropriate proceeding, he could not have been compelled to pay the bid in money. Under the statute he had the option to pay within ten days or to let the land be resold. He may have been, and probably was, unable to pay so large a sum in cash. Or, if able, he may have been unwilling to pay so much for the land otherwise than by his receipt on a judgment which was worthless if not entitled to the proceeds of the sale. To hold him liable to pay the money to the sheriff, is to change the terms of the sale and to make a new contract between him and the sheriff.

Opinion of the Court.

2. The argument of the plaintiffs' counsel that no special return could be made, because Osmer did not give his receipt or make his claim until after the acknowledgment of the deed, is all afterthought. It is manifest that both the sheriff and the purchaser were acting under paragraph 1 of the terms of sale, down to the time when the receipt was given; that the sheriff waived the giving of the lien creditor's receipt on the day of sale and accepted it at a later day, and that no return of the writ was made till afterward. Independent of that, the acknowledgment of the deed did not stand in the way of making a special return. Until the deed is delivered to the purchaser, the record of its acknowledgment is within the control of the court and may be vacated: Cock v. Thornton, 108 Pa. 642. The money was due to Osmer from the defendant in the execution, and therefore he could receive and retain it with a good conscience, provided he practiced no deception to induce the sheriff to accept his receipt.

3. The only evidence upon which the charge of fraud is based, is in the testimony of John Pryer. Nowhere does it appear that Osmer knew that the legacies were liens upon the land having priority over his judgment; and the fair import of the words, which Pryer put into his mouth, was simply that he hoped, by running up Jesse's land and the personal property bequeathed to him, so as to produce a surplus over and above Osmer's judgment, out of which the legacies might be realized, to enable Jesse to pay them. Nobody seems to have known that the legacies were liens. The legatees themselves did not know it. The sheriff and his counsel were not willing to believe it until this court so decided. Why, then, should it be assumed that Osmer knew it? It is not pretended that Osmer made any false statements to the sheriff. He merely claimed the rights of a lien creditor purchasing at sheriff's sale. The evidence of fraud relied on to toll the statute of limitations, was too unsubstantial to submit to the jury, and there was even less to support the claim of a subsequent promise to indemnify.

OPINION, MR. CHIEF JUSTICE PAXSON:

Complaint is made in the first assignment that the learned court below erred in charging the jury that " where there is a lien creditor and he claims the proceeds of the sale, we think

Opinion of the Court.

then, if the sheriff distributes it, he does so at his own risk. Where there is a lien creditor, he is not simply dealing 'party with party, outside of court,' as is said in one case cited here. He is dealing as a sheriff, and the act of his in taking a lien creditor's receipt is an official act in his official capacity as sheriff."

We are unable to see any error in this instruction. And such rule imposes no hardship upon the sheriff. If, in this instance, he had followed the act of assembly and made the special return therein pointed out, he would have been in no peril, and would have suffered no loss. Instead of making such return and placing himself within the protection of the law, he merely returned that he had sold the real estate for the sum of $2,085, and took the receipt of the purchaser, who was also a lien creditor, for the amount. It so happened that there was a charge upon the land which did not appear upon the searches. This charge, the plaintiff, who was the high sheriff of Venango county at the time, has been obliged to make good, and he now sues the lien creditor, whose receipt he took, for the money which he was thus obliged to pay. Upon the trial below the learned judge gave the jury a binding instruction to find for the defendant. We see no error in this.

The statute of limitations was a bar to the claim. Our attention has not been called to any such fraud in the case as would toll the statute. Osmer does not appear to have made any false statements to the sheriff which induced him to take Osmer's receipt. Nor is there any clear evidence that he knew these legacies were a charge upon the land. He might well have known of their existence, and yet not have been aware that they were a lien. Had there been evidence that he had such knowledge, that he concealed it from the plaintiff, and by means of such concealment induced the sheriff to give the receipt, there might have been ground for the position that the statute would not run until the discovery of such fraud and concealment. But, as the case stands, it is merely the assertion of the claim of a lien creditor to receipt for the purchase money, and the unwise acquiescence of the sheriff thereto, without protecting himself as he might and should have done, by a compliance with the law specially provided for that purpose.

Complaint is made in the fifth assignment that the court

erred in not charging and submitting to the jury the liability of the defendant upon the second count in the plaintiff's statement, viz.: " The promise made by him to indemnify the plaintiff, which promise was made within six years prior to the commencement of this suit." It might perhaps be sufficient to say, in answer to this assignment, that there is nothing before us to show that the learned judge was asked to pass upon any such question. But if he had been, there was not sufficient evidence to base it upon. There was no proof of a promise " to indemnify " the plaintiff. The only witness upon this point was the plaintiff himself. Taking his testimony as a whole, it did not come up to the standard of indemnity. It was vague and uncertain.

Judgment affirmed.

